[Cite as *State v. Robinson*, 2022-Ohio-2896.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29272 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-3751 |
| | : | |
| KENNESHA ROBINSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of August, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 426 Patterson Road, Dayton, Ohio 45419
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Kennesha Robinson appeals her conviction for one count of arson, in violation of R.C. 2909.03(A)(1), a felony of the fourth degree. Robinson filed a timely notice of appeal on October 8, 2021.

{¶ 2} The record establishes that Robinson and one of the victims, Jonathan Howard, dated for approximately three or four months. Howard testified that although he eventually ended the relationship with Robinson in August 2020, the two remained friends and still talked regularly. Howard testified that he believed their break-up to be mostly amicable.

{¶ 3} Shortly thereafter, Howard began dating Madeline Moorehead. Moorehead testified that she had not known Robinson prior to dating Howard. Howard testified that Robinson lived on the same street as Moorehead, approximately two or three houses down.

{¶ 4} Moorehead and Howard testified that, beginning in September 2020, Robinson threatened them and damaged their property. Specifically, Howard testified that on September 17, 2020, Robinson broke all of the windows on the front of his house. Howard testified that he immediately contacted the police regarding the damage to his property. Howard also testified that he had a video-recording depicting Robinson's breaking his windows that day, but no recording of the incident was ever produced at trial. Howard testified that when he confronted Robinson about the damage she had caused, she initially just laughed at him. Eventually, however, Robinson agreed to pay for the damage to Howard's residence and, in return, he agreed to not press charges.

{¶ 5} Moorehead testified that one night at the end of September 2020, she had

observed Robinson following her home as she left Howard's residence. Howard testified that on October 4, 2020, Robinson broke out several windows on his motor vehicle. While he did not personally observe Robinson break his vehicle's windows, he testified that he had a video-recording of the incident; the video was not admitted at trial. Howard called Robinson to talk about the damage she caused, but she laughed at him and stated "I'll do it again." Tr. 97.

{¶ 6} On October 12, 2020, Moorehead's vehicle, a Pontiac Grand Prix, was set on fire while it was parked in front of her residence. Moorehead immediately called the police, who responded to the scene. Neither Moorehead nor Howard saw who set fire to her vehicle. Moorehead, however, testified that Robinson had been threatening her and her property in person and by phone. Moorehead testified that shortly after her vehicle was set on fire, Robinson told Moorehead in person, "I'm going to get you [Moorehead]." Tr. 49. Moorehead testified that in response to Robinson's threats, she had purchased a Ring camera for her residence so she could potentially record Robinson committing a criminal act.

{¶ 7} Howard testified that later in the day on October 12, 2020, he was sweeping up some glass left over from the car fire in front Moorehead's residence when he observed someone driving Robinson's white truck swerve toward him like he or she wanted to hit him with the vehicle. Howard testified that he had been able to move out of the path of the vehicle but had not seen who was driving the vehicle. Moorehead testified that she was standing on the porch of her residence when the truck swerved, and she saw that Robinson was driving the vehicle. Moorehead and Howard testified that they reported

the incident to the police.

{¶ 8} On October 24, 2020, Howard received over 20 calls to his cellphone from a blocked number, but he only answered three of the calls. Moorehead testified that she recorded the last of the three calls to Howard's cellphone. Both Howard and Moorehead testified that they were familiar with Robinson's voice, and they identified Robinson as the speaker; she stated "I hope there's full coverage on everything because everything is going down tonight." Tr. 59, 106. Moorehead and Howard reported the incident to the police. The recording of the phone call was played for the jury during Robinson's trial. *See* State's Ex. 1.

{¶ 9} Moorehead testified that at approximately 3:00 a.m. on November 22, 2020, she had just returned to bed from the bathroom when she heard a noise outside her residence; she recognized it as someone banging on a car window. When she looked out of her window, Moorehead observed Robinson banging on the windows of Howard's Buick. Howard testified that he had parked his vehicle in front of Moorehead's residence in an effort to keep Robinson from harassing Moorehead. Moorehead went to the front porch of her residence armed with a handgun. Moorehead testified that she made eye contact with Robinson and stated, "B****, like really." Moorehead then fired a shot into the air to scare Robinson. At that point, Robinson threw a Molotov cocktail at Howard's vehicle, ran to a small dark-colored, four-door sedan, got in the backseat, and was driven away by an unidentified individual. Almost immediately, the Molotov cocktail exploded on Howard's vehicle and caught fire. The explosion was recorded on Moorehead's Ring Doorbell camera.

{¶ 10} Moorehead immediately reported the incident to the police, and officers and personnel from the Dayton Police Department and Fire Department arrived at Moorehead's residence.  Dayton Police Officer Joshua Gundaker testified that he responded to the scene and observed "extensive" fire damage to Howard's vehicle. Notably, Officer Gundaker testified that he had previously been dispatched to Moorehead's residence on October 12, 2020, when her vehicle caught on fire.  Officer Gundaker testified that while he was at the scene, Moorehead located a bottle containing a paper towel that she believed had been used by Robinson as the Molotov cocktail that caught Howard's vehicle on fire.  The bottle was later collected by Dayton Fire Investigator Kristopher Cosme.  Cosme testified that he had the bottle and the paper towel tested at the State Fire Marshal's Office, and both items tested positive for the presence of gasoline.

{¶ 11} On December 4, 2020, Robinson was indicted for one count of arson.  At her arraignment on February 4, 2021, Robinson pled not guilty to the charged offense. On August 10, 2021, the State filed a motion in limine in which it sought to introduce other acts committed by Robinson in order to establish a modus operandi and her identity as the perpetrator of the instant offense.  The trial court held a brief hearing immediately before Robinson's trial began on August 16, 2021, later ruling that testimony would be permitted regarding Robinson's conduct in the two months prior to the firebombing of Howard's vehicle, specifically the breaking of windows on Howard's house and vehicle, her attempt to run over Howard, the threatening phone calls she made to Howard, and Robinson's setting Moorehead's car on fire.

{¶ 12} The jury found Robinson guilty of arson, and the trial court sentenced her to community control sanctions not to exceed five years.

{¶ 13} Robinson appeals. Her first assignment of error is as follows:

APPELLANT WAS DEPRIVED OF A FAIR TRIAL THROUGH THE TRIAL COURT'S ADMISSION OF EVIDENCE CONCERNING OTHER ALLEGED BAD ACTS PERTAINING TO APPELLANT.

{¶ 14} Robinson contends that the trial court erred when it granted the State's motion in limine and permitted the State to introduce evidence of her previous altercations and threatening communications with Howard and Moorehead at trial.

{¶ 15} As previously noted, the State filed a pretrial motion in limine to admit other-acts evidence, which the trial court granted. However, Robinson did not object to the other-acts evidence at trial. Robinson's failure to object to the evidence of her other-acts evidence during trial constituted waiver. "Failure to object to evidence at trial constitutes a waiver of any challenge, regardless of the disposition made for a preliminary motion in limine." *State v. Strozier*, 2d Dist. Montgomery No. 25133, 2013-Ohio-965, ¶ 8, citing *State v. Maurer*, 15 Ohio.St.3d 239, 259, 473 N.E.2d 768 (1984). A motion in limine, by itself, is insufficient to preserve any issue. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 135. An appellate court does not need to consider an error during trial which could have been called, but was not called, to the trial court's attention when the error could have been corrected by the trial court. *Maurer* at 260. Due to Robinson's failure to object during trial, her assertion on appeal that evidence of her other acts should have been excluded has been waived. Thus, we review the admission of

such evidence under a plain error analysis. *See State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶133.

{¶ 16} To establish plain error, a defendant must show "(1) there was an error, (2) the error was 'plain,' i.e., obvious, and (3) the error affected substantial rights." *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 217, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). To affect "substantial rights," the error "must have affected the outcome of the trial." *Id.*, citing *Barnes* at 27. The defendant is therefore required to demonstrate a reasonable probability that the error resulted in prejudice. *Id.* "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 17} A trial court has broad discretion to admit or exclude evidence, and its exercise of that discretion will not be disturbed on appeal absent an abuse of discretion. *State v. Hunt*, 2d Dist. Darke No. 2018-CA-9, 2019-Ohio-2352, ¶ 27. A trial court abuses its discretion if it makes an unreasonable, unconscionable, or arbitrary decision. *Id.*

{¶ 18} When engaging in this gatekeeper role regarding the admissibility of evidence, the trial court must determine if potential evidence is relevant. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Evid.R. 401. In other words, there must be some probative value to the evidence. Generally, relevant evidence is admissible. Evid.R. 402. However, even if

evidence is relevant, it can become inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. Evid.R. 403(A).

{¶ 19} Evid.R. 404(A) states: "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Evid.R. 404(A). In other words, it does not necessarily follow that because a person performed an act in the past, he or she committed this act.

{¶ 20} However, Evid.R. 404(B) provides that "other acts" or "propensity" evidence is sometimes admissible for other purposes such as proof of motive, opportunity, preparation, plan, intent, absence of mistake, identity, or knowledge. Evid.R. 404(B). "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts. Thus, while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, non-propensity-based issue." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22.

{¶ 21} R.C. 2945.59 similarly provides that:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent

thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶ 22}** Like Evid.R. 404(B), R.C. 2945.59 "preclude[s] the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but it does not preclude admission of that evidence for other purposes, e.g., to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 25.

**{¶ 23}** In *Williams*, the Supreme Court of Ohio "set forth a three-part analysis for determining the admissibility of other-acts evidence: to be admissible, (1) the evidence must be relevant, Evid.R. 401, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, Evid.R. 404(B), and (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice, Evid.R. 403." *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841 ¶ 72, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. " 'The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law.' " *Id.*, quoting *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. "The court is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose." (Citations omitted.) *Id.*

**{¶ 24}** As previously stated, the State filed a pretrial motion in limine seeking to

introduce other acts committed by Robinson in order to establish modus operandi and her identity as the perpetrator of the offense with which she was charged. The trial court held that testimony would be permitted regarding Robinson's conduct in the two months prior to the firebombing of Howard's vehicle, specifically the breaking of windows on Howard's house and vehicle, Robinson's attempt to run over Howard, her threatening phone calls to Howard, and Robinson's setting Moorehead's car on fire.

{¶ 25} Robinson argues the other-acts evidence here was not offered for any legitimate, non-propensity purposes. The State responds that Howard's and Moorehead's testimony provided evidence of Robinson's modus operandi and, as such, the trial court properly admitted the evidence as proof of Robinson's identity as the perpetrator. As the Supreme Court explained in *Hartman*, evidence of the defendant's modus operandi or "behavioral fingerprint" is inadmissible unless the question of the perpetrator's identity is an issue at trial. *Hartman* at ¶ 36-39. " 'Modus operandi' literally means method of working" and "is evidence of signature, fingerprint-like characteristics unique enough 'to show that the crimes were committed by the same person.' " *Id.* at ¶ 37, quoting Weissenberger, *Federal Evidence*, Section 404.17 (7th Ed.2019). Where identity is an issue, modus operandi evidence "is relevant to prove identity," as " '[e]vidence that the defendant had committed uncharged crimes with the same peculiar modus tends to identify the defendant as the perpetrator of the charged crime.' " *Id.* Thus, for other-acts evidence to be admissible on the question of identity, "both the other-acts evidence and the charged crime must involve the same distinctive, one-of-a-kind modus." (Internal quotations omitted.) *Id.* Moreover, "[s]light differences between the

current and other acts will not affect the admissibility of the other-acts evidence as long as it establishes 'a modus operandi identifiable with the defendant.' " *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 119, quoting *State v. Lowe*, 69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994).

{¶ 26} Here, Robinson's defense at trial was that she could not have set fire to Howard's vehicle during the early morning hours of November 22, 2020, because she was spending the night at the residence of her friend, Tammarah Bailey, who testified to that effect at trial. Therefore, evidence probative of the identity of the arsonist was highly relevant. However, Robinson argues that the probative value of any other acts evidence regarding the fire that destroyed Moorehead's car on October 12, 2020, was substantially outweighed by the danger of unfair prejudice to her. Robinson also argues that neither Howard nor Moorehead testified that they actually observed Robinson start the previous fire. Thus, Robinson contends that because no one actually observed her set the fire on October 12, 2020, the only reason the evidence was introduced was to show that she was merely acting in conformity with former conduct when she set fire to Howard's car on November 22, 2020.

{¶ 27} Robinson also argues that because Howard and Moorehead did not personally observe the individual who set the fire on October 12, 2020, the jurors were required to engage in "inference stacking." The rule against "stacking" inferences -- drawing an inference based solely upon another inference -- although it is still recognized, has very limited application. It only prohibits drawing an inference based solely and entirely upon another inference, unsupported by any additional facts or inferences drawn

from other facts. *State v. Maddox*, 2d Dist. Montgomery No. 18389, 2001 WL 726778, *3 (June 29, 2001). The rule does not prohibit the use of parallel inferences in combination with additional facts, or drawing multiple, separate inferences from the same set of facts. *Id.*

**{¶ 28}** Here, the central issue at trial was the identity of the individual who set fire to Howard's vehicle. Moorehead and Howard testified that beginning in September 2020, Robinson threatened them and damaged their property, including breaking the front windows of Howard's house on September 17, 2020. Eventually, Robinson agreed to pay for the damage to Howard's residence, and he agreed not to press charges. Moorehead testified that one night in September 2020, Robinson followed her home as she left Howard's residence. Howard testified that on October 4, 2020, Robinson broke several windows on his motor vehicle. Howard testified that he called Robinson to talk about the damage she caused, but she laughed at him and stated "I'll do it again." Tr. 97.

**{¶ 29}** On October 12, 2020, Moorehead's vehicle was set on fire while it was parked in front of her residence. Neither Moorehead nor Howard saw who set the fire. However, Moorehead testified that Robinson had been threatening her and her property in person and by phone. Moorehead testified that shortly after her vehicle was set on fire, Robinson told Moorehead in person, "I'm going to get you [Moorehead]." Tr. 49.

**{¶ 30}** Howard testified that also on October 12, 2020, he was sweeping up some glass left over from the car fire at Moorehead's residence when he observed someone driving Robinson's white truck swerve toward him like he or she wanted to hit him with the vehicle; Moorehead, who had been standing on the porch of her residence when the

truck swerved, testified that Robinson had been driving the vehicle. Finally, on October 24, 2020, Howard received over 20 calls to his cellphone from a blocked number; he answered only three of the calls, and he recorded the last call. Both Howard and Moorehead testified that they were familiar with Robinson's voice, and they identified Robinson as the speaker who stated, "I hope there's full coverage on everything because everything is going down tonight." Tr. 59, 106.

{¶ 31} The trial court did not err, plainly or otherwise, when it admitted *all* of the other acts evidence submitted by the State. The other acts evidence, including the evidence of the fire that destroyed Moorehead's vehicle in October 2020, was not offered to establish that Robinson had a propensity to commit arson. Rather, the other acts evidence was admitted to establish that Robinson had a "behavioral fingerprint" or modus operandi of harassing, threatening, and causing harm to the property of Howard and Moorehead. In our view, the other acts evidence was directly relevant to the identity of the arsonist. Additionally, the evidence was admitted for the sole purpose of establishing the identity of the individual who set fire to Howard's vehicle, and the probative value of the evidence outweighed any potential unfair prejudice to Robinson.

{¶ 32} Lastly, we note that the trial court gave the jury the following limiting instruction before its deliberations began:

Evidence was received about the commission of acts other than the offense with which the defendant is charged in this trail [sic]. That evidence was received only for a limited purpose, it was not receive[d], and *you may not consider it to prove the character of the defendant in order to show that*

*she acted in conformity with that character.*

If you find that the evidence of other acts is true, and that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves the defendant's motive, intent, or purpose to commit the offense charged in this trial, or the identity of the person who committed the offense in this trial. That evidence cannot be considered for any other purpose.

(Emphasis added.) Tr. 321.

{¶ 33} In light of the foregoing, we find that the trial court did not err when it granted the State's motion in limine, permitting the State to introduce other acts evidence regarding Robinson's previous altercations and threatening communications with Howard and Moorehead at trial.

{¶ 34} Robinson's first assignment of error is overruled.

{¶ 35} Robinson's second assignment of error is as follows:

APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 36} Robinson argues that her conviction for arson was against the manifest weight of the evidence.

{¶ 37} This court has stated that "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citations omitted.) *State v. Jones*, 2d Dist. Montgomery No. 25724, 2014-Ohio-2309, ¶ 8. "When evaluating whether a

[judgment] is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id*., quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 38} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). However, we extend less deference in weighing competing inferences suggested by the evidence. *Id*. The fact that the evidence is subject to differing interpretations does not render the judgment against the manifest weight of the evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 39} As previously stated, Moorehead testified that at approximately 3:00 a.m. on November 22, 2020, she had just returned to bed from the bathroom when she heard a noise outside her residence, which she recognized as someone banging on a car window. When she looked outside, Moorehead observed Robinson's banging on the windows of Howard's vehicle. Howard testified that he had parked his vehicle in front of Moorehead's residence in an effort to deter Robinson from harassing Moorehead.

Moorehead went to the front porch of her residence armed with a handgun. Moorehead testified that she made eye contact with Robinson, made a comment to her, and then fired a shot into the air to scare Robinson. At that point, Moorehead observed Robinson throw a Molotov cocktail at Howard's vehicle, run to another car, get in the backseat, and be driven away by an unidentified individual. The Molotov cocktail exploded on Howard's vehicle, and it caught fire. Only the actual explosion was recorded on Moorehead's Ring doorbell camera.

{¶ 40} At trial, Robinson's defense was that she could not have set fire to Howard's vehicle during the early morning hours of November 22, 2020, because she was spending the night at the residence of Tammarah Bailey, who testified to that effect at trial. The CEO of Robinson's employer, Trent Grooms, testified that his company's business records indicated that Robinson had worked from 8:00 a.m. to 10:00. p.m. on November 21, 2020, and from 9:00 a.m. to 9:00 p.m. on November 22, 2020. However, Grooms's testimony did not account for Robinson's whereabouts in the early morning hours of November 22, 2020, when Howard's vehicle was set on fire. Similarly, Robinson's coworker, Belinda Jones, testified that Robinson appeared at work on November 22, 2020, from 9:00 a.m. to 9:00 p.m., but Jones did not testify regarding Robinson's whereabouts prior to appearing at work that day.

{¶ 41} Having reviewed the record, we find no merit in Robinson's manifest weight challenge. It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Brown*, 2d Dist. Montgomery No. 27571, 2018-Ohio-3294; *see also State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. A trier of fact does not

lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here, the jury reasonably credited the State's evidence, which established that Robinson was guilty of the offense. Accordingly, the trial court did not lose its way and create a manifest miscarriage of justice in reaching a guilty verdict for arson.

{¶ 42} Robinson's second assignment of error is overruled.

{¶ 43} Robinson's third assignment of error is as follows:

APPELLANT WAS DEPRIVED OF A FAIR TRIAL THROUGH THE ADMISSION OF EXPERT OPINION THAT WAS NOT HELD TO THE REASONABLE DEGREE OF SCIENTIFIC CERTAINTY STANDARD.

{¶ 44} Robinson argues that Fire Investigator Cosme's testimony was unreliable because he failed to state his conclusion in terms of scientific certainty that Moorehead and Howard's respective car fires were "incendiary" and caused by arson. In support of her argument, Robinson cites *State v. Holt,* 17 Ohio St.2d 81, 86, 246 N.E.2d 365 (1969), for the proposition that an expert opinion is competent only if it is held to a reasonable degree of scientific certainty. Here, the record establishes that the State laid the proper foundation to have Cosme designated as an expert in the field of fire investigations, but it never requested the trial court to designate him as such. Thus, Robinson argues that Cosme's testimony regarding the nature of the fire that destroyed Howard's vehicle should be stricken from the record.

{¶ 45} Initially, we note that Robinson did not object to any portion of Cosme's testimony during trial. Because Robinson failed to raise any of her current expert-

testimony objections at trial, we review her claim for plain error only. *See State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 121.

**{¶ 46}** Evid. R. 702 governs the admissibility of expert testimony. It provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

**{¶ 47}** Under Evid. R. 702, expert testimony is allowed if scientific, technical, or other specialized training or knowledge will assist the trier of fact in understanding the evidence or determining a fact at issue. An expert witness is defined as "one who testified concerning matters of scientific, mechanical, professional or other like nature, requiring special study, experience or observation not within the common knowledge of laymen." *Landskroner v. Pub. Utils. Comm. of Ohio*, 5 Ohio St.3d 96, 97, 449 N.E.2d 760 (1983). When witnesses are deemed competent to testify as experts, the subject matter of the testimony must be relevant to a fact at issue, "either in its own content or by illuminating other evidence that is relevant to such a fact." *State v. Smith*, 84 Ohio App.3d 647, 657, 617 N.E.2d 1160 (2d Dist.1992). However, under Evid.R. 702, experts

are not required to use any particular "magic words." *State v. Beasley,* 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028; *see also Lucsik v. Kosdrosky*, 2017-Ohio-96, 79 N.E.3d 1284, ¶ 15 (8th Dist.). Rather, an expert's opinion is admissible so long as it provides evidence of more than mere possibility or speculation. *Lucsik* at ¶ 15 (expert testimony admissible even though not offered to "a reasonable degree of medical certainty"); *see also State v. Skinner,* 2d Dist. Montgomery No. 11704, 1990 WL 140897 (Sept. 26, 1990) ("[S]o long as the record indicates that the trial court did not abuse its discretion, we will not disturb a decision to allow a witness to offer expert opinion testimony simply because 'magic' words do not appear on the face of the record.").

{¶ 48} Cosme testified that he had been a fire investigator for the Dayton Police Department for three and a half years. Cosme also testified that he had completed a six-month on-boarding process in order to become a fire investigator. Cosme had been required to attend a 40-hour fire investigation course at the Ohio Fire Academy and the National Fire Academy. Cosme testified that he also attended continuing education courses to maintain his certifications, held a certification with the International Association of Arson Investigators, and was certified as a fire investigation technician and an evidence collection technician. Additionally, Cosme testified that he had investigated more than 400 fires during his career.

{¶ 49} As part of his investigation in this case, Cosme inspected both Howard's and Moorehead's vehicles. Cosme testified that Howard's vehicle had an irregular burn pattern which indicated that the fire did not start within the engine compartment. Rather, the fire started on the surface of Howard's vehicle and was consistent with an ignitable

liquid. Cosme also testified that Moorehead's vehicle had an irregular burn pattern similar to Howard's vehicle.

{¶ 50} During the trial, the prosecutor asked the following question: "Based on your training and your experience, and I think you probably have already mentioned this, what – were you able to make a determination whether those were natural or would be considered deemed arson fires from your training?" Cosme testified that, based upon his training and experience, both vehicle fires were caused by arson.

{¶ 51} Despite laying the proper foundation to have Cosme designated as an expert, the State never moved to have him designated as such. Nevertheless, Cosme's expert opinion regarding the cause of the vehicle fires required "special study, experience or observation not within the common knowledge of laymen." *Landskroner*, 5 Ohio St.3d 96, 97, 449 N.E.2d 760. Additionally, Cosme's testimony provided evidence of more than mere possibility or speculation. In our view, the record establishes that Cosme was qualified to testify as an expert witness with respect to arson investigations, and the fact that the "magic words" designating him as such were not spoken did not amount to plain error.

{¶ 52} Robinson's third assignment of error is overruled.

{¶ 53} Robinson's fourth and final assignment of error is as follows:

APPELLANT WAS DEPRIVED OF A FAIR TRIAL THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 54} Robinson contends that her trial counsel was ineffective for failing to object to Cosme's testimony, failing to object to Moorehead's testimony regarding the number

of phone calls Howard received on October 24, 2020, as hearsay, and failing to review a report concerning the October 12, 2020 car fire.

{¶ 55} Alleged instances of ineffective assistance of trial counsel are reviewed under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To prevail on an ineffective assistance claim, a defendant must establish: (1) that his or her trial counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 56} To establish deficient performance, it must be shown that trial counsel's performance fell below an objective standard of reasonable representation. *Id*. at 688. In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id*. at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 57} To establish prejudice, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. " 'A

reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

**{¶ 58}** In our disposition with respect to Robinson's third assignment, we found that the State was entitled to present the expert testimony of Cosme pursuant to Evid.R. 702. Therefore, it would have been a futile act for Robinson's trial counsel to object, and counsel is not required to perform vain acts. *State v. Lodge*, 2d Dist. Greene. No. 2004-CA-43, 2005-Ohio-1908, ¶ 27. Moreover, Robinson has failed to demonstrate that there is a reasonable probability that but for her counsel's failure to object to Cosme's testimony, the result of the case would have been different. Specifically, Cosme's testimony that the fire that destroyed Howard's vehicle was caused by arson was duplicative of Moorehead's testimony that she personally observed Robinson throw a Molotov cocktail at the vehicle, which started the fire.

**{¶ 59}** Robinson also argues that her counsel was ineffective for failing to object to Moorehead's testimony regarding the approximately 20 phone calls made to Howard's cellphone on October 24, 2020, as hearsay. However, Moorehead's testimony regarding the phone calls was not hearsay because Moorehead was clearly present when the calls were received, and she testified that she recorded one of the calls with her own cellphone. Additionally, Moorehead and Howard identified Robinson's voice on the recording. The statements made by Robinson on the recording were not hearsay because they were her own statements being offered against her. *See* Evid.R. 801(D)(2).

**{¶ 60}** Lastly, Robinson argues that her counsel was ineffective for failing to review a report concerning the October 12, 2020 car fire. However, the record establishes that

defense counsel was familiar with the report because he used it to cross-examine Cosme, the fire investigator. Tr. 196-197. The record establishes that counsel merely borrowed a copy of the report from the State because counsel did not have his own copy of the report that day at trial. Tr. 181-183. Defense counsel also raised the issue of the October 12, 2020, report during the hearing for the motion in limine, which occurred prior to trial. Tr. 19. On the record before us, Robinson has failed to establish that she received ineffective assistance of counsel. In any event, Robinson has failed to demonstrate that there is a reasonable probability that but for defense counsel's actions, the result of the trial would have been different.

{¶ 61} Robinson's fourth assignment of error is overruled.

{¶ 62} All of Robinson's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Charles W. Slicer, III
Hon. Mary E. Montgomery