[Cite as *State v. Hunt*, 2019-Ohio-2352.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-9 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-001- |
| | : | 589 |
| JASON L. HUNT | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Municipal Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of June, 2019.

. . . . . . . . . . .

JESSE J. GREEN, Atty. Reg. No. 0040265, Darke County Prosecutor's Office, Appellate
Division, 504 S. Broadway, Greenville, Ohio 45331
        Attorney for Plaintiff-Appellee

P.J. CONBOY, II, Atty. Reg. No. 0070073, 5613 Brandt Pike, Huber Heights, Ohio 45424
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Jason L. Hunt was found guilty of theft, a first-degree misdemeanor, after a bench trial in the Darke County Municipal Court. Hunt appeals from his conviction, claiming that his conviction was based on insufficient evidence and against the manifest weight of the evidence and that the trial court erred in admitting certain testimony. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} The State presented three witnesses at trial: Brad Flora, Director of Finance and Accounting at Darke Rural Electric; Mark Heft, a safety and engineering technician at Darke Rural Electric; and Deputy Jay Pearson of the Darke County Sheriff's Department. The defense did not call any witnesses. The evidence at trial established the following facts.

{¶ 3} Tracey Frech had an account with Darke Rural Electric for electric service at the residence located at 568 State Route 121. On April 17, 2018, a Darke Rural Electric employee went to the residence for the purpose of disconnecting the electricity due to nonpayment. Flora indicated that Darke Rural Electric does this as part of its standard procedure when a customer's payment is late. Hillarie Frech, Tracey's daughter, was home when the Darke Rural Electric employee arrived, and she (Hillarie) indicated that she wanted to enter into a payment plan. Hillarie agreed to make four weekly payments of $154.57, and she made the first payment by phone that day. The payment agreement, signed by Hillarie, was entered into evidence. On cross-examination, Flora confirmed that Hunt's name was not on the residential account, and he did not sign the payment agreement.

{¶ 4} Frech failed to make the April 24, 2018 payment, as required by the payment agreement. Darke Rural Electric considered the agreement to be broken, and an employee went to the residence the following day to disconnect service. This was accomplished by pulling the meter out and tilting it to a certain degree so the connections would not be made. Flora indicated that customers usually call due to their lack of electricity, and if customers do not call within a few days or a week, the company typically will go back and check to see if someone is living there, if something was done by the customer to reconnect service, and the like. No one called.

{¶ 5} On May 10, 2018, a Darke Rural Electric employee when back to Frech's property and saw that the meter seal had been broken and the meter had been put back. Darke Rural Electric determined the amount of electricity that had been used, and it added that amount plus a $100 tampering charge to Frech's account. The employee also put a "plastic blank" in the meter, which would not allow any connections to be made. Tracey Frech paid the $100 tampering charge.

{¶ 6} On the morning of May 16, 2018, Mark Heft checked the meter and noticed that the wire seal on the bottom had been broken. Heft removed the seal, opened the lid to the meter and pulled out the plastic blank. He then noticed that someone had wired metal strips to feed power from the top of the meter base down to the bottom and then into the house. As Flora described it, the plastic blank had been "jumped" with metal strips that allowed for the flow of electricity. As a result, the house was receiving power without its being metered. To disconnect power again, Heft installed a new plastic device and then pulled the fuse from the transformer.

{¶ 7} Because the meter had been bypassed and the exact amount of electricity

had not be recorded, Heft calculated the value of the electricity for seven days using an average 191.45 kilowatt hours times the rate. The value of the electricity was $27.80.

{¶ 8} Heft testified that working with the meter was dangerous, and the person who wired the bypass had "mechanical skill and savvy." Heft indicated that there was a significant risk of electrocution for someone who tampers with a meter base. However, he stated on cross-examination that he did not think that the individual needed training or experience as an electrician to bypass the meter.

{¶ 9} Heft testified that he never went back to the residence after May 16, but he could see that the fuse remained out of the transformer when he happened to drive by. Heft stated that he did notice a generator "sitting beside the house beside the meter base. Sometimes it was covered."

{¶ 10} At 11:39 a.m. on May 16, Flora received a phone call from an individual who identified himself as Hunt and gave his address. (Flora did not articulate the address that had been given, but the flow of the prosecutor's questioning suggested that the topic of conversation was 568 State Route 121.[1]) The man told Flora that a new meter box had been installed, that Darke Rural Electric had no right to be on the residential property, and that the property no longer received service from Darke Rural Electric. The man indicated that the property was receiving service from Dayton Power and Light.

{¶ 11} The following day, Deputy Pearson responded to Darke Rural Electric on a

---

[1] Prior to trial, Hunt filed a motion in limine, seeking to prevent the State from introducing evidence of the telephone call on the ground that Flora could not authenticate Hunt's voice and thus, there was insufficient basis to authenticate that Hunt made the call. The trial court overruled the motion, reserving the issue for trial. When the State asked Flora at trial whether he had received a call from Hunt, Hunt objected. The trial court overruled the objection.

dispatch that the company needed to file a report regarding tampering with a meter base. Pearson spoke to three Darke Rural Electric employees, including Heft and Flora. Deputy Pearson testified that he was told that Hunt and Hillarie Frech lived at the residence, but the account was in Tracey Frech's name.

**{¶ 12}** Deputy Pearson went to house several times to locate Hunt, but he was unsuccessful. After Hunt was arrested on unrelated charges, Pearson spoke to Hunt at the jail. Hunt told the deputy that only he (Hunt) and Hillarie lived at the residence.[2] Hunt denied to Pearson that he had tampered with the meter base. When asked who would have tampered with the meter base, Hunt told the deputy that he did not know. Pearson testified that Hunt said that he had several friends who came and went and that Hillarie "would not have messed with it." Hunt admitted to Pearson that he had hooked up a generator to the breaker panel.

**{¶ 13}** After hearing the evidence, the trial court found Hunt guilty of theft. The court sentenced him to 90 days in jail of which 87 were suspended, a $500 fine of which $250 was suspended, and restitution of $27.80. The trial court stayed the execution of the sentence pending appeal.

**{¶ 14}** Hunt appeals from his conviction, raising two assignments of error.

## II. Sufficiency and Manifest Weight of the Evidence

**{¶ 15}** In his first assignment of error, Hunts claims that the trial court erred in convicting him of theft. He argues that his conviction was based on insufficient evidence and was against the manifest weight of the evidence.

---

[2] As discussed in detail, below, defense counsel objected to the deputy's testimony regarding Hunt's residence. The trial court overruled the objection.

{¶ 16} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 17} In contrast, when reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 18} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight

of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 19} In reviewing challenges based on the sufficiency and/or manifest weight of the evidence, we are required to consider all of the evidence admitted at trial, regardless of whether it was admitted erroneously. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284; *State v. Rosales*, 2d Dist. Montgomery No. 27117, 2018-Ohio-197, ¶ 16, citing *State v. Johnson*, 2015-Ohio-5491, 55 N.E.3d 648, ¶ 95 (2d Dist.).

{¶ 20} Hunt was convicted of theft in violation of R.C. 2913.02(A), a first-degree misdemeanor. Of relevance, R.C. 2913.02(A) provides: No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent[.]"

{¶ 21} On appeal, Hunt argues that he was not the owner of the residence, he was not the account holder on the electric service, there were no witnesses to the tampering of the meter, Hunt denied tampering with the meter, there was no evidence that Hunt had the technical skills to bypass the meter, and there was no physical evidence to indicate that Hunt was the perpetrator. Hunt further argues that there was "no credible evidence" that he resided at the residence.

{¶ 22} Viewing the facts in the light most favorable to the State, there was sufficient evidence that Hunt committed theft of the electric services. Testimony from Darke Rural Electric employees established that service at the residence located at 568 State Route 121 was disconnected twice due to non-payment, and that someone twice bypassed Darke Rural Electric's actions and reconnected electrical services to the house. Mark Heft noticed on May 16, 2018 that the meter had been bypassed the second time. He

testified that someone had wired metal strips to feed power from the top of the meter base down to the bottom and then into the house. Due to these actions, the house received power from Darke Rural Electric without its being metered. Accordingly, there was ample evidence that someone, with purpose to deprive Darke Rural Electric of electricity services, knowingly exerted control over the company's electric services without the company's consent.

{¶ 23} The State presented evidence that Hillarie Frech, the daughter of the Darke Rural Electric account holder, resided at 568 State Route 121, that Hunt was Frech's boyfriend, and that Hunt resided there with her. When power was disconnected from the residence on May 16, someone identifying himself as Hunt called Darke Rural Electric to complain. Although Hunt denied tampering with the meter, he acknowledged hooking up a generator to the breaker box so the house would have electricity. Hunt indicated that Hillarie would not have tampered with the meter. Construing this evidence in the State's favor, the trial court could have reasonable concluded that Hunt was the individual who tampered with the meter and stole the electricity.

{¶ 24} Moreover, we cannot conclude that Hunt's conviction was against the manifest weight of the evidence. It was the province of the trial court, as the finder of fact, to evaluate the witnesses' credibility. In reaching its verdict, the court was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented. *E.g., State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. Considering all of the evidence at trial, the trial court reasonably found Hunt guilty of theft.

{¶ 25} Hunt's first assignment of error is overruled.

### III. Evidentiary Matters

**{¶ 26}** In his second assignment of error, Hunt claims that the trial court erred in allowing the deputy to testify about Hunt's statement that he (Hunt) resided at the house with Hillarie Frech. Hunt argues that his statements to Deputy Pearson were not recorded, and the specific statement about his residing at the home with Hillarie was not disclosed to defense counsel prior to trial.

**{¶ 27}** A trial court has broad discretion to admit or exclude evidence, and its exercise of that discretion will not be disturbed on appeal absent an abuse of discretion. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 14. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

**{¶ 28}** As an initial matter, Hunt's statements to the deputy constituted admissions of a party opponent, which are not hearsay (Evid.R.801(D)(2)), and they were admissible against him as substantive evidence of his guilt. There is no requirement that a defendant's statements be recorded in order to be admissible.

**{¶ 29}** Under Crim.R. 16(B)(1), the prosecuting attorney must provide defendant's counsel with "[a]ny written or recorded statement by the defendant or a co-defendant, including police summaries of such statements, and including grand jury testimony by either the defendant or co-defendant[.]" The trial court has discretion to regulate discovery in a manner consistent with Crim.R. 16. Crim.R. 16(L); *State v. Mobley*, 2d Dist. Montgomery No. 26858, 2016-Ohio-4579, ¶ 23. If it comes to the court's attention that a party has not complied with Crim.R. 16 or the court's discovery order, the trial court may "order such party to permit the discovery or inspection, grant a continuance, or

prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

{¶ 30} The Ohio Supreme Court has held that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus; *see State v. Pelfrey*, 2d Dist. Montgomery No. 27474, 2018-Ohio-2427, ¶ 50. This holding applies equally to discovery violations committed by the State and by the defense. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 42. In exercising its discretion when the discovery violation is committed by the State, trial courts should consider: (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *Darmond* at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983).

{¶ 31} At trial, defense counsel objected when Deputy Pearson testified that Hunt admitted to living at the residence with Hillarie Frech. Defense counsel argued that the statement was not provided to defense counsel in accordance with Crim.R. 16. The parties agreed that the prosecutor had provided Deputy Pearson's summary of his conversation with Hunt to the defense counsel. The State acknowledged, however, that the summary did not include Hunt's purported statement regarding his residence. The prosecutor argued that "the State should be given a certain amount of leeway given the nature of the Officer's narrative." The trial court overruled the objection.

{¶ 32} We find no abuse of discretion in the trial court's allowance of the deputy's testimony regarding Hunt's statement of his residence. The State complied with its obligation under Crim.R. 16 to provide defense counsel with the deputy's summary of Hunt's oral statements. The deputy's failure to include Hunt's alleged statement that he resided at Hillarie's residence could have been, but was not, the subject of cross-examination and a basis for challenging the deputy's credibility regarding that specific statement. Pearson was questioned on cross-examination about the State's lack of a recording of Pearson's interview with Hunt and alleged deficiencies in Pearson's investigation of Darke Rural Electric's complaint.

{¶ 33} Hunt's second assignment of error is overruled.

### IV. Conclusion

{¶ 34} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

FROELICH, J., dissents:

{¶ 35} Viewing the facts in the light most favorable to the State, there was ample evidence from which the trial court could find beyond a reasonable doubt that *someone* committed theft of the electric services. Testimony from Darke Rural Electric employees established that service at the residence located at 568 State Route 121 was disconnected twice due to non-payment, and that someone twice bypassed Darke Rural Electric's actions and reconnected electric service to the house. Mark Heft noticed on May 16, 2018 that the meter had been bypassed the second time. He testified that

someone had wired metal strips to feed power from the top of the meter base down to the bottom and then into the house. Due to these actions, Darke Rural Electric provided electricity to the house that was not metered and for which it was not paid. Accordingly, there was sufficient evidence that someone, with purpose to deprive Darke Rural Electric of electricity services, knowingly exerted control over the company's electric services without the company's consent.

{¶ 36} However, I would find that there was insufficient evidence to establish beyond a reasonable doubt that Hunt was the individual who committed the theft. The State presented evidence that Hillarie Frech, the daughter of the Darke Rural Electric account holder, resided at 568 State Route 121, that Hunt was Frech's boyfriend, and that Hunt resided there with her. On May 16, after Heft pulled the fuse from the transformer and power again was disconnected from the residence, someone identifying himself as Hunt called Darke Rural Electric to complain. However, the phone call merely established that Hunt (assuming that he made the phone call) believed that a new meter box had been installed and that power was being supplied by Dayton Power & Light (DP&L); the phone call did not establish Hunt knew the home had been receiving power illegally or that he was the one who had "jumped" the meter. The State also presented evidence that Hunt had told Deputy Pearson that he had hooked up a generator to the breaker box, and Heft testified that he saw a generator outside the house after the fuse had been removed from the transformer. However, there is nothing illegal about hooking up a generator to supply electricity once electric service has been disconnected, nor does that action imply that Hunt had the need or the technical skills to safely circumvent the disabling device that Darke Rural Electric had placed on the electric meter.

{¶ 37} Hunt denied tampering with the meter, and he told the deputy that Hillarie would not have tampered with the meter. As a resident in the house, Hunt had a motive to reconnect the electricity unlawfully and an opportunity to do so. However, the same is true of Hillarie, who had agreed to make payments to Darke Rural Electric but then defaulted, or perhaps Tracey Frech, who was the account holder and who paid the tampering charge.

{¶ 38} It is not enough that the State proved that Hunt was one of two or more people who could have committed the offense. As stated by the Fourth District, "[a] fifty percent possibility does not satisfy the standard of beyond a reasonable doubt." *State v. Miley*, 114 Ohio App.3d 738, 744, 684 N.E.2d 102 (4th Dist.1995). In *Miley*, the Fourth District reversed a father's conviction for felony child endangering as based on insufficient evidence when the evidence established that the father was one of two caregivers and there was no direct evidence that father had abused his infant daughter, failed to protect her, or knew of the abuse. The appellate court held that circumstantial evidence that the father and the mother were the only ones with access to the child did not prove beyond a reasonable doubt that the father was the one who abused the child. *Id*. at 745.

{¶ 39} While it is very possible, or perhaps even probable, that Hunt was the perpetrator, the State presented insufficient evidence from which the fact-finder could determine, beyond a reasonable doubt, whether it was Hunt, Hillarie, or another person on Hillarie or Hunt's behalf who tampered with the electric meter and committed theft of electricity. Accordingly, I dissent.

. . . . . . . . . . . .

Copies sent to:

Jesse J. Green
P.J. Conboy, II
Hon. Julie L. Monnin
James S. Detling, Acting Judge