[Cite as *State v. Tucker*, 2023-Ohio-2894.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-79 |
| | : | |
| v. | : | Trial Court Case No. 21-CR-0352 |
| | : | |
| JASON TUCKER | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 18, 2023

. . . . . . . . . . .

WILLIAM D. HOFFMAN, Attorney for Appellee

MICHAEL J. SCARPELLI, Attorney for Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Jason Tucker was convicted in the Clark County Court of Common Pleas of operating a vehicle while under the influence of alcohol or drugs (OVI), in violation of R.C. 4511.19(A)(2) (prior felony OVI within 20 years/test refusal), a felony of the third degree, and an accompanying repeat OVI offender specification. He appeals from his conviction,

challenging various evidentiary rulings and claiming that his conviction was based on insufficient evidence and against the manifest weight of the evidence. For the following reasons, Tucker's conviction will be affirmed.

## I. Background and Procedural History

{¶ 2} On May 3, 2020, Trooper Justin Picklesimon observed Tucker make a right-hand turn at an intersection in Springfield. During the turn, Tucker's white Mercury crossed the yellow center line and traveled on the wrong side of the road before returning to its proper side. After observing the vehicle cross the center line twice more, the trooper initiated a traffic stop. Based on Tucker's appearance and behavior, an open container of beer in the car, and a strong odor of alcohol emanating from Tucker, the trooper decided to have Tucker submit to field sobriety tests. The trooper concluded that Tucker was impaired. When asked, Tucker refused to submit to a chemical test.

{¶ 3} Tucker was originally indicted on two counts of OVI – violations of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2) – in Clark C.P. No. 20 CR 459. The charges alleged that Tucker had two prior felony OVI convictions. A specification under R.C. 2941.1413 further alleged that Tucker had seven prior OVI convictions. In April 2021, Tucker was reindicted in Clark C.P. No. 21 CR 213, and the prior case was dismissed. All filings were transferred into the new case.

{¶ 4} A jury trial was scheduled for May 5, 2021. That morning, Tucker filed a joint motion to bifurcate and in limine, asking the trial court to: (1) if Tucker were found guilty of an OVI, determine the existence of any prior OVI convictions alleged in the indictment; and (2) prohibit the State from commenting on or eliciting testimony regarding any prior

OVI convictions. Tucker argued that his prior OVI convictions were Evid.R. 404(B) evidence, the probative value of which was outweighed by a danger of unfair prejudice. The trial court addressed the issue prior to commencing the trial. According to defense counsel, Tucker agreed to stipulate to a prior felony conviction in either Clark C.P. No. 13 CR 229 or Clark C.P. No. 18 CR 286, and the trial court "then ruled that the court would determine the existence of any OVI convictions alleged in the specifications outside the presence of the jury if defendant were convicted of OVI." Def.'s July 19, 2021 Motion.

{¶ 5} After addressing the legal issues, the court allowed Tucker time to speak with his attorney and indicated that trial would begin at 10:15 a.m. When that time came, defense counsel informed the trial court that he could not locate Tucker and that Tucker may have left the courthouse. After a short wait, the court discharged the jurors and issued a capias for Tucker's arrest. Tucker returned a short time later and was taken into custody.

{¶ 6} On June 7, 2021, the State filed a superseding indictment in this case (Clark C.P. No. 21 CR 352), and Case No. 21 CR 213 was dismissed. Again, the prior filings were transferred into the new case. The June 7, 2021 indictment charged Tucker with four OVI felonies: (1) a violation of R.C. 4511.19(A)(1)(a) with three prior felony OVI convictions, a third-degree felony; (2) a violation of R.C. 4511.19(A)(2) with three prior felony OVI convictions, a third-degree felony; (3) a violation of R.C. 4511.19(A)(1)(a) with five or more prior convictions within 20 years, a fourth-degree felony; and (4) a violation of R.C. 4511.19(A)(2) with five or more prior convictions within 20 years, a fourth-degree felony. Each offense included a specification under R.C. 2941.1413; eight prior

convictions were identified.

{¶ 7} The trial was rescheduled for July 28, 2021. Shortly before that trial date, Tucker filed a motion to dismiss Counts 3 and 4, characterizing those charges as an attempt by the State to circumvent the court's prior ruling about his OVI convictions and to get the prior convictions before the jury. Tucker also renewed his motion to bifurcate and in limine. In response, the State asked the trial court to reconsider its prior ruling. Tucker opposed the State's request and asked, as an alternative to the dismissal of Counts 3 and 4, that the trial court order Counts 1 and 2 to be tried separately from Counts 3 and 4.

{¶ 8} On July 28, 2021, the trial court overruled the State's motion for reconsideration, reasoning that the prior convictions in the specification did not elevate the degree of the offense and, therefore, were not essential elements of the offense. The court ordered that the prior convictions in the specifications not be presented to the jury. If Tucker were convicted of OVI, the evidence of his prior convictions could be presented to the court at sentencing. The court further ruled that the State could present evidence of Tucker's prior felony convictions in Counts 1 and 2, as they enhanced the degree of the offense to a third-degree felony. However, if Tucker stipulated to one of the felony convictions, the State would be prohibited from presenting evidence of the remaining two felony convictions to the jury. If Tucker did not stipulate to a prior felony conviction, the State could present evidence of all three felony convictions. The court overruled the motion to dismiss Counts 3 and 4, but it granted Tucker's motion for a separate trial on those counts. During the trial on those charges, the State would be permitted to present

evidence of all prior OVI convictions that elevated the OVI offense to a fourth-degree felony.

{¶ 9} Tucker did not appear for the July 2021 jury trial, and it was again rescheduled.

{¶ 10} A two-day jury trial on Counts 1 and 2 began on September 28, 2021; the trial on Counts 3 and 4 was deferred.   As a preliminary matter, defense counsel asked the trial court to preclude the State from offering a letter Tucker had recently sent to the prosecutor about the case.   The trial court overruled defense counsel's motion.   The State then presented the testimony of three state troopers, an investigator with the prosecutor's office, and a deputy with the Clark County Sheriff's Office, as well as four exhibits.   Tucker rested without calling any witnesses.   After deliberating, the jury found Tucker guilty of both OVI counts.

{¶ 11} Shortly after discharging the jury, the trial court heard evidence regarding the specifications.   Trooper Picklesimon identified a certified BMV record (State's Ex. 5) and certified copies of the judgment entries of Tucker's prior OVI convictions (State's Ex. 2, 6-12).   The trial court admitted the exhibits over defense counsel's objections and found Tucker guilty of both specifications.

{¶ 12} Before imposing sentence, the trial court merged the two offenses, and the State elected to proceed on Count 2.   The court sentenced Tucker to 36 months in prison for the OVI refusal offense plus five years for the specification, to be served consecutively. The trial court ordered Tucker to complete a drug and alcohol addiction program and to pay a $10,500 fine.   Tucker's driver's license was suspended for life.

{¶ 13} Tucker initially appealed his conviction in *State v. Tucker*, 2d Dist. Clark No. 21 CA 51. However, on September 29, 2022, we dismissed his appeal for lack of a final appealable order. Although the trial court's sentencing entry had resolved Counts 1 and 2, it failed to dispose of Counts 3 and 4. Shortly after we rendered our decision and final judgment entry, the State dismissed Counts 3 and 4. Tucker then filed the instant appeal.

{¶ 14} Tucker now raises five assignments of error. We will address them in an order that facilitates our analysis.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 15} In his fourth and fifth assignments of error, Tucker claims that his conviction for OVI with the repeat OVI offender specification was based on insufficient evidence and against the manifest weight of the evidence.

{¶ 16} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 17} In contrast, "[a] weight of the evidence argument challenges the believability

of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12*; see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact. Rather, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 18} We recognize that, in other assignments of error, Tucker challenges the trial court's admission of certain evidence, namely his letter to the prosecutor, Trooper Picklesimon's opinion testimony, and evidence of his prior OVI convictions. However, when reviewing claims based on the sufficiency or manifest weight of the evidence, we are required to consider all the evidence admitted at trial, regardless of whether it was admitted erroneously. *See State v. Fleming*, 2d Dist. Clark No. 2021-CA-40, 2022-Ohio-1876, ¶ 27, citing, *e.g., State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284. Accordingly, we must consider the disputed evidence in conducting our analysis.

{¶ 19} In this case, Tucker was convicted of violating R.C. 4511.19(A)(2). That statute prohibits persons who have an OVI guilty plea or OVI conviction within the past

20 years from driving while under the influence of alcohol and drugs and, upon being arrested for such conduct, from refusing to submit to a chemical test. For the offense to be a felony of the third degree, the State was required to prove that Tucker had been convicted of or pleaded guilty to a prior felony OVI offense. R.C. 4511.19(G)(1)(e). The repeat OVI offender specification applies when the "offender, within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more equivalent offenses." R.C. 2941.1413.

{¶ 20} According to the State's evidence at trial, at approximately 12:40 a.m. on Sunday, May 3, 2020, Trooper Picklesimon of the Ohio State Highway Patrol was approaching a red light at the intersection of South Yellow Springs and West Pleasant Streets when he observed a white Mercury make an "extra-wide turn" onto South Yellow Springs Street. In doing so, the Mercury crossed over the yellow center line separating two southbound lanes from the single northbound lane. Picklesimon drove through the intersection to catch up with the car. While following it, he saw the vehicle twice cross over the yellow center line by approximately a tire width before returning to its proper lane. The trooper activated his overhead lights and initiated a traffic stop. The Mercury stopped in a restaurant parking lot, parking diagonally across two spaces.

{¶ 21} Two individuals were seated in the Mercury, and Trooper Picklesimon approached the driver, Tucker. The trooper asked Tucker why he was driving the way he was, but Tucker just looked at him, confused. When Picklesimon asked Tucker if he had a driver's license on him, Tucker patted his pockets as if to look for it. The trooper then asked if Tucker was a valid driver, and Tucker shook his head, indicating that he

was not.   Tucker did not provide identification but provided his name and birth date.

{¶ 22} While talking with Tucker, Trooper Picklesimon observed that Tucker's eyes were bloodshot and watery, that there was an open container of beer in the car, and that there was a strong odor of an alcoholic beverage coming from the vehicle.   Picklesimon asked Tucker to exit the car.   Tucker's movements were relatively slow, his steps were unsteady, and he was having difficulty balancing.   After Tucker complied, the trooper smelled the odor of alcohol coming from Tucker's person.   Trooper Picklesimon told Tucker that he could smell alcohol, and Tucker initially denied drinking anything.   He later said that he had had two or three beers.   The trooper observed that Tucker had slurred speech.

{¶ 23} Trooper Ke'Von Huguely arrived while Trooper Picklesimon was talking with Tucker by his cruiser.   Huguely first approached the passenger, saw open beer cans, and smelled a strong odor of alcohol from inside the car.   He then came over to Trooper Picklesimon and Tucker.   Huguely testified that he smelled a strong odor of alcohol coming from Tucker.

{¶ 24} Trooper Picklesimon asked Tucker if he would submit to field sobriety tests. Tucker initially declined but ultimately agreed.   Picklesimon noticed that the pupils of Tucker's eyes were different sizes and asked Tucker why.   Tucker responded that he was blind in one eye.   Based on that information, Picklesimon opted not to perform the horizontal gaze nystagmus (HGN) test.   The trooper testified that there are three standard tests, but he was not required to administer them all.

{¶ 25} Picklesimon had Tucker perform the walk-and-turn test.   While

Picklesimon gave him instructions, Tucker kicked off his sandals. Trooper Huguely saw Tucker lose his balance while removing his footwear and not follow Picklesimon's instructions during the walk-and-turn test.

{¶ 26} Trooper Picklesimon testified that he had observed five out of eight clues of impairment. He further explained at trial that Tucker had failed to follow instructions "multiple, multiple times," became agitated during the test, and said several times that he wanted to leave. Picklesimon believed that Tucker's "level of agitation was on the rise" and that his failure to follow instructions was going to lead to a "far more difficult situation." Because of this, the officer opted not to administer the third test, the one-legged stand test. Believing that Tucker was impaired, Trooper Picklesimon placed him under arrest.

{¶ 27} Trooper Picklesimon transported Tucker to the patrol post. While in the cruiser, Tucker's emotions ranged from compliant to calm to loud and yelling. The trooper found the behavior, which included screaming expletives at the officer, to be another indication of intoxication.

{¶ 28} At the patrol post, Trooper Picklesimon read the BMV 2255 administrative license suspension form (State's Ex. 1) to Tucker. Trooper Robert Sabo witnessed Picklesimon do so. When Picklesimon asked Tucker if he would submit to a chemical test, Tucker said no. Picklesimon noted the refusal on the form.

{¶ 29} With some redactions, the cruiser video of the traffic stop and Tucker's behavior in the cruiser (State's Ex. 3) was played for the jury. Over defense counsel's objection, Picklesimon testified at trial that, based on his personal and professional experience, Tucker was intoxicated on May 3, 2020. Tucker had previously pled guilty

to a third-degree felony OVI offense in Clark C.P. No. 18 CR 286, as reflected in State's Exhibit 2.

{¶ 30} The State also produced a letter sent by Tucker to the Clark County Prosecutor's Office. The letter was dated September 19, 2021, and postmarked on September 20, 2021, approximately a week before the trial. In his correspondence, which was addressed to both the prosecutor and the trial judge, Tucker asked that he be placed in a drug and alcohol program for this case (Case No. 21 CR 352). He wrote, in part, that he was "41 years old, and I take full responsibility for my actions. I need help to stay clear and clean of drugs and alcohol. I do not feel that sending me to prison is going to help with my addiction." The letter asked the prosecutor to make a copy for the judge because he did not have another envelope.

{¶ 31} The letter appeared to be signed by Tucker, and Tucker had told Deputy Caesar Gonzales of the Clark County Sheriff's Office that he had sent a letter to the prosecutor. Tucker was incarcerated at the Clark County Jail when the letter was sent, and the envelope appeared to have been purchased from the jail commissary. Steve Southward, the investigator for the Clark County Prosecutor's Office, confirmed the office's receipt of the letter.

{¶ 32} Upon review of the evidence, Tucker's conviction was neither based on insufficient evidence nor against the manifest weight of the evidence. It was the province of the jury, as the trier of fact, to assess the witnesses' credibility and determine whether the State had proven beyond a reasonable doubt that Tucker had committed the charged offense. In reaching its verdict, the jury was free to believe all, part, or none of each

witness's testimony. *State v. Peterson*, 2d Dist. Montgomery No. 29061, 2021-Ohio-3947, ¶ 27. Through cross-examination, defense counsel raised potential questions about whether Tucker had been intoxicated and whether he had sent the letter to the prosecutor. Nevertheless, the jury could have reasonably concluded that Tucker had driven his vehicle while under the influence of drugs or alcohol, that he had refused to submit to a chemical test, and that he had previously been convicted of a felony OVI offense.

**{¶ 33}** Tucker further challenges the trial court's conclusion that he had five or more prior OVI offenses within 20 years of the May 3, 2020 offense. The State offered a certified BMV report, highlighting six prior OVI convictions between 2006 and 2013. It also presented certified copies of judgment entries that corresponded to those OVI offenses. In addition, the State offered the judgment entries from Clark C.P. No. 18-CR-286 (State's Ex. 2) and Clark C.P. No. 13-CR-229 (State's Ex. 6), both felony OVI convictions that were not included in the BMV report. Upon review of the evidence, the trial court reasonably found Tucker guilty of the specification attached to his offense.

**{¶ 34}** Tucker's fourth and fifth assignments of error are overruled.

### III. Evidentiary Matters

**{¶ 35}** Tucker's first, second, and third assignments of error relate to evidentiary rulings made by the trial court during the jury trial and the subsequent bench trial on the specifications. He claims that the trial court erred in allowing Trooper Picklesimon to opine on his guilt, in admitting the letter to the prosecutor, and in allowing "improper evidence" of Tucker's prior convictions during the specification stage.

**{¶ 36}** A trial court has broad discretion to admit or exclude evidence, and its

exercise of that discretion will not be disturbed on appeal absent an abuse of discretion. *State v. Hunt*, 2d Dist. Darke No. 2018-CA-9, 2019-Ohio-2352, ¶ 27. A trial court abuses its discretion if it makes an unreasonable, unconscionable, or arbitrary decision. *Id.*

### A. Trooper Picklesimon's Opinion Testimony

**{¶ 37}** Tucker first claims that the trial court erred in allowing Trooper Picklesimon to testify about whether he had been under the influence of drugs or alcohol. Tucker argues that Picklesimon's testimony went beyond permissible opinion testimony. We disagree.

**{¶ 38}** The Ohio Rules of Evidence delineate two forms of witness testimony: lay and expert. "The distinction between lay and expert witness opinion testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *State v. Wells*, 2d Dist. Clark No. 2021-CA-19, 2022-Ohio-30, ¶ 17, quoting 28 Ohio Jurisprudence 3d, Criminal Law: Procedure, Section 1641; *see State v. McKee*, 91 Ohio St.3d 292, 297, 744 N.E.2d 737, fn. 2.

**{¶ 39}** A lay witness may testify about opinions or inferences that are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. In other words, a witness must have first-hand knowledge of the subject of his or her testimony and the opinion must be one that a rational person would form based on the observed facts. It also must help the trier of fact in understanding the testimony of the witness or determining a fact in issue. *Wells* at ¶ 18; *State v. Bolling*, 2d Dist. Montgomery No.

20225, 2005-Ohio-2509, ¶ 12. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶ 40} Trial courts have considerable discretion in admitting the testimony of lay witnesses, and we evaluate the court's decision for abuse of discretion. *Brown v. Burnett*, 2020-Ohio-297, 144 N.E.3d 475, ¶ 28 (2d Dist.).

{¶ 41} In *Columbus v. Mullins*, 162 Ohio St. 419, 123 N.E.2d 422 (1954), the Ohio Supreme Court found no prejudicial error in allowing police officers to testify in an OVI case that, in their opinion, the defendant was drunk. The Court reasoned: "It is true that ordinarily opinion evidence may not be admitted when it, in effect, answers the very question as to the existence or nonexistence of an ultimate fact to be determined by the jury. * * * An opinion with reference to intoxication is probably one of the most familiar subjects of nonexpert evidence, and almost any lay witness, without having any special qualifications, can testify as to whether a person was intoxicated. It follows that, where one says that in his opinion a person is intoxicated, he is really stating it as a fact rather than an expert opinion. In any event, we do not hold that admission of such evidence is prejudicially erroneous." *Id.* at 421-422.

{¶ 42} The supreme court has since reiterated that "[i]t is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated." *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 12, citing *Mullins* at 421. Numerous Ohio cases attest to this statement. *See, e.g., E. Cleveland v. Harris*, 8th Dist. Cuyahoga No. 109404, 2021-Ohio-952, ¶ 30 (officer

permitted to testify that defendant was intoxicated); *State v. Kapitula*, 12th Dist. Clermont No. CA2020-03-010, 2020-Ohio-6664, ¶ 14 ("a witness needs no special qualifications to testify as to whether an individual appears intoxicated"); *State v. DeWulf*, 6th Dist. Fulton No. F-12-010, 2013-Ohio-2802, ¶ 30 (no error in gas station clerk testifying that she thought appellant was intoxicated); *State v. Lee*, 9th Dist. Summit No. 28713, 2018-Ohio-2497, ¶ 14 (lay witness could testify that defendant was intoxicated); *State v. Barrett,* 5th Dist. Licking No. 00CA-47, 2001 WL 194782, *3 (Feb. 26, 2001) (no abuse of discretion in allowing trooper to give opinion that defendant was under the influence of alcohol).

**{¶ 43}** In this case, during Trooper Picklesimon's direct examination, the prosecutor asked the officer questions about his personal and professional experiences interacting with individuals who were under the influence of alcohol and/or drugs. Picklesimon relayed some of the indicators of intoxication, including balance problems, a strong odor of alcoholic beverages coming from their person, bloodshot and watery eyes, slurred speech, and inability to cooperate or function. Tr. 119. The prosecutor then asked:

Q: Based on your personal and professional experiences with people under the influence of alcohol and what you observed with the defendant on May 3rd, 2020, did you form an opinion as to whether the defendant was under the influence of alcohol, drugs or a combination of them both?

A: Yes, sir. I did.

Q: What was that opinion?

A: That the driver was under the influence of alcohol.

Tr. 120. At the State's request, Trooper Picklesimon then listed the factors he considered to reach this conclusion.

{¶ 44} Trooper Picklesimon's opinion was based on his observations of Tucker, which included Tucker's driving, bloodshot eyes, poor balance, failure to follow instructions, behavior, and the smell of an alcoholic beverage emanating from him. The trooper's opinion was rationally based upon his perceptions and was helpful to a clear understanding of his testimony and to a determination of a fact in issue, namely whether Tucker was under the influence of alcohol. Accordingly, the trooper's testimony was admissible under Evid.R. 701, and pursuant to Evid.R. 704, his opinion was not rendered inadmissible solely because it related to the ultimate issue before the jury. The trial court did not abuse its discretion in permitting Trooper Picklesimon's opinion testimony.

{¶ 45} Tucker's first assignment of error is overruled.

**B. Tucker's Letter**

{¶ 46} Second, Tucker claims that the trial court erred in allowing the State to present at trial the letter he sent to the prosecutor in September 2021. He argues that the letter was a statement made during plea discussions and, therefore, was not admissible pursuant to Evid.R. 410(A)(5).

{¶ 47} With limited exceptions that do not apply here, Evid.R. 410(A)(5) renders inadmissible "[a]ny statement made in the course of plea discussions in which counsel for the prosecuting authority or for the defendant was a participant and that do not result in a plea of guilty or that result in a plea of guilty later withdrawn." As explained in the 1991 Staff Notes to the rule, Evid.R. 410 "is designed to protect plea bargaining

statements involving attorneys in order to promote the disposition of criminal cases by compromise." "[C]ourts have acknowledged that if a policy of plea bargaining 'is to be fostered, it is essential that plea negotiations remain confidential to the parties if they are unsuccessful. Meaningful dialogue between the parties would, as a practical matter, be impossible if either party had to assume the risk that plea offers would be admissible in evidence.' " *State v. Dunbar*, 8th Dist. Cuyahoga No. 89896, 2008-Ohio-2033, ¶ 29, quoting *United States v. Verdoorn*, 528 F.2d 103, 107 (8th Cir.1976).

**{¶ 48}** Evid.R. 410(A)(5) protects statements by an accused when, at the time the statements were made, the accused had "both a subjective and an objectively reasonable expectation that a plea was being negotiated." *State v. Jeffries*, 119 Ohio St.3d 265, 2008-Ohio-3865, 893 N.E.2d 487, ¶ 9, citing *State v. Frazier*, 73 Ohio St.3d 323, 652 N.E.2d 1000 (1995). Whether an accused's statements were made during plea discussions is determined on a case-by-case basis in light of all the facts. *State v. Meeds*, 2d Dist. Miami No. 2003-CA-5, 2004-Ohio-3577, ¶ 20, citing *Frazier* at 337.

**{¶ 49}** Plea bargaining is defined, in part, as "[t]he process whereby the accused and the prosecutor in a criminal case work out a mutually satisfactory disposition of the case subject to court approval." *Frazier* at 336, quoting *Black's Law Dictionary* (6 Ed.1990) 1152. Addressing the similar Fed.R.Evid. 410(a)(4), some federal courts have considered the following factors in determining whether communications constitute plea discussions: "(1) whether the discussions involved the terms of the plea; (2) whether the prosecutor was involved in the discussion; (3) whether defendant was counseled and the behavior of counsel; and (4) whether it is expressly stated that the discussion was in

furtherance of plea negotiations." *United States v. Rivera*, E.D.N.Y. No. 13-CR-149 (KAM), 2015 WL 1725991, *4 (Apr. 15, 2015). Another federal court considered the timing of the communication, whether defense counsel was involved in the communication, and whether the communication is a unilateral offer to plead guilty in exchange for a government concession. *See United States v. Krohn*, M.D.Pa. No. 3:18-CR-391, 2020 WL 3405722 (June 19, 2022). Although Fed.R.Evid. 410(a)(4) differs from Evid.R. 410(A)(5) to some degree, we find these cases to be illustrative.

{¶ 50} In this case, prior to closing arguments, defense counsel renewed his objection to the admission of Tucker's letter. Noting that Evid.R. 410(A)(5) prohibits statements made during plea negotiations, counsel argued: "[I]n this case it's obvious, plea negotiations were underway at that time. In fact, [the prosecutor] made an offer at the outset of this case back in March or April of this year. An offer was made, complete four years in prison, and obviously, Mr. Tucker tried to get out of prison but instead do a treatment program, so on Evidence Rule 410, it should not be admissible. Based on that we're asking the Court to reconsider." Tr. 231-232.

{¶ 51} The prosecutor responded that he had sent a letter to defense counsel, saying that the State's four-year plea offer expired on September 7, 2021, and Tucker had rejected that offer. The prosecutor further said that his letter explained that Tucker's options after that deadline were to plead to the indictment or to go to trial. The prosecutor continued: "The plea negotiations were clearly ended at this time. This letter was sent September 19th, well after that. I advised also that prior to receiving the letter, as we didn't receive it until the 22nd, [defense counsel] sent a request of a possible thirty

months. I advised him my letter was clear. That there was going to be no offer unless he pleaded to the indictment or it would go to trial. Clearly, negotiations were clearly done. And the letter, there is no saying that he's going to plead. There's no wording in there advising him that he's trying to plead. It was simply asking to be sent to treatment and him admitting his responsibility in this case. I didn't see this as a negotiation. This is merely a statement that he has sent to the prosecutor's office. Negotiations were clearly closed in terms of a plea by September 7th, as I stated today." Tr. 232-233.

{¶ 52} Defense counsel disputed the prosecutor's assertion that plea negotiations had ended. He argued: "Plea negotiations are always ongoing even if they changed from four years, pleading to an indictment, to go to trial. It's clear that Mr. Tucker was looking at a prison sentence here if he was convicted of this offense. He was attempting to stay out of prison and instead go to a treatment program, so it's clear that Mr. Tucker was trying to negotiate something other than a prison sentence, and that is a plea negotiation. It doesn't mean that he won't plead to the indictment or it doesn't mean anything other than the fact that, yes, I'll plead to something; but I want to go to a drug treatment program as opposed to going to prison. As I said, plea negotiations are always ongoing." Tr. 233.

{¶ 53} The trial court overruled defense counsel's motion, concluding that Evid.R. 410(A)(5) did not apply because "counsel was not a participa[nt]. It was simply a letter allegedly drafted by the defendant himself." Tr. 234. After defense counsel asked the court for clarification, the court further explained: "Well, my finding is that neither the prosecuting attorney, anyone in the prosecutor's office, prosecuting authority or defense

counsel was a participa[nt] in the discussions. It was simply a letter written by the defendant and sent to the prosecutor. There was no attorney or prosecutorial involvement in the statement being made. It was simply made by the defendant of his own violation [sic] and sent to the prosecutor's office, so I find that that section is inapplicable." Tr. 234-235.

{¶ 54} With the record before us, we conclude that the trial court did not abuse its discretion in allowing the State to present the letter at trial, albeit for different reasons. At the outset, we note that Evid.R. 410 does not provide a definition for "statement." However, the Ohio Rules of Evidence elsewhere define a statement as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A); *see also United States v. Jones*, W.D. Va. No. 7:20-cr-00046, 2022 WL 16698684, *3 (Nov. 3, 2022) (applying hearsay definition of "statement" to Fed.R.Evid. 410). Statements made during plea negotiations do not need to be oral statements to fall within Evid.R. 410(A)(5).

{¶ 55} The trial court focused on whether defense counsel or the prosecutor was a "participant." Evid.R. 410 makes clear that plea discussions involving the prosecutor or defense counsel are protected. *See* 1991 Staff Notes to Evid.R. 410. This differs from the corresponding federal rule, which covers only plea discussions with the prosecuting attorney. *See* Fed.R.Evid. 410(a)(4).

{¶ 56} In our view, the critical question in this case was whether Tucker made his statement "during the course of plea discussions." From the representations of the parties, plea negotiations had formally ceased when Tucker sent his letter. The State

had offered a four-year sentence, the terms of which could have been accepted until September 7, 2021. The prosecutor indicated to defense counsel that, after that date, Tucker's only choices were to plead to the indictment or to proceed with a trial. Despite the prosecutor's letter, defense counsel proposed a 30-month sentence; the prosecutor responded by reiterating the two options then available. On the facts before us, Tucker did not have an objectively reasonable expectation that a plea was being negotiated when he sent the letter to the prosecutor's office.

{¶ 57} As defense counsel argued, nothing precluded the defense from attempting to reopen negotiations, despite the State's prior representation that it would no longer negotiate. However, the content of Tucker's letter did not clearly convey that he was attempting to reopen negotiations. Tucker sent the letter without the assistance of counsel, and although he expressed his hope for substance abuse treatment rather than prison, Tucker did not propose terms that the prosecutor could accept or reject. Rather than being transactional in nature, the letter resembled a written statement of allocution requesting leniency. Notably, the letter was intended to reach both the prosecutor and the trial court. The content of the letter did not demonstrate that Tucker subjectively sought to reach a plea agreement with the State when he sent his letter.

{¶ 58} Given the substance and timing of Tucker's letter, we find no error in the trial court's conclusion that its admission was not precluded by Evid.R. 410(A)(5). Accordingly, Tucker's second assignment of error is overruled.

### C. Evidence of Tucker's Prior Convictions

{¶ 59} In his third assignment of error, Tucker claims that the trial court erred in

admitting evidence of his prior convictions at the bench trial on the repeat OVI offender specification.    He argues that, due to various deficiencies in the judgment entries, the State did not establish that they were relevant.

{¶ 60} At trial, defense counsel objected to: (1) State's Exhibit 2 on the ground that it was not listed on the certified BMV report; (2) State's Exhibit 6 because the Ohio Revised Code section on the judgment entry was not an OVI offense and the conviction was not on the BMV report; (3) State's Exhibits 7, 10, 11, and 12 on the ground that the judgment entries did not include the defendant's date of birth or Social Security number; and (4) State's Exhibit 8 because the judgment entry did not name the offense.    The trial court overruled defense counsel's objections but indicated that it would consider counsel's arguments in determining whether the prior offenses had been proven.

{¶ 61} R.C. 2945.75(B) addresses proof of prior convictions.    It states:

(B)(1) Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction.

(2) Whenever in any case it is necessary to prove a prior conviction of an offense for which the registrar of motor vehicles maintains a record, a certified copy of the record that shows the name, date of birth, and social security number of the accused is prima-facie evidence of the identity of the accused and prima-facie evidence of all prior convictions shown on the record. The accused may offer evidence to rebut the prima-facie evidence

of the accused's identity and the evidence of prior convictions. Proof of a prior conviction of an offense for which the registrar maintains a record may also be proved as provided in division (B)(1) of this section.

(3) If the defendant claims a constitutional defect in any prior conviction, the defendant has the burden of proving the defect by a preponderance of the evidence.

**{¶ 62}** The Ohio Supreme Court has set forth the criteria for when a judgment of conviction is a final order.   In *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, the supreme court held that "[a] judgment of conviction is a final order subject to appeal under R.C. 2505.02 when it sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk."   *Id*. at the syllabus.

**{¶ 63}** Applying R.C. 2945.75(B), we find no error in the trial court's admission of the State's exhibits concerning Tucker's prior convictions.   State's Exhibit 5 was a certified BMV report, which included Tucker's name, date of birth, age, address, and Social Security number.   Trooper Picklesimon testified that the identifying information on the BMV report matched what he had for Tucker for the OVI stop on May 3, 2020.   The BMV report enumerated several prior convictions within 20 years of the May 3, 2020 offense, including convictions for OVI offenses in Greene C.P. No. 12-CR-279; Clark M.C. No. 12 TRC 14681; Clark M.C. No. 12 TRC 13817; Madison M.C. No. TRC 1001599A; Washington C.H. M.C. No. TRC 0803819; and Washington C.H. M.C. No. TRC 0602420. Under R.C. 2945.75(B)(2), the State was permitted to offer the BMV report as prima facie

evidence that Tucker had these prior convictions. *Accord State v. Nelson*, 10th Dist. Franklin No. 19AP-548, 2020-Ohio-4657, ¶ 17 ("R.C. 2945.75(B)(2) expressly allows the state to rely on a certified copy of the accused's BMV record as prima facie evidence of prior OVI convictions."). The trial court did not err in admitting the certified BMV report.

{¶ 64} State's Exhibits 7, 10, 11, and 12 concerned four of the convictions on the BMV report. They identified the defendant as "Jason T. Tucker" but did not include Tucker's date of birth or Social Security number. Standing alone, they might not have been adequate to establish that Tucker (as opposed to another individual with the same name) was convicted in those cases. However, because the certified judgment entries in State's Exhibits 7, 10, 11, and 12 corresponded to convictions on the BMV report, the BMV report served to "identify the defendant named in the entry as the offender in the case at bar." R.C. 2945.75(B)(1). Accordingly, the trial court did not err in admitting the exhibits as relevant to whether Tucker had these four prior OVI offenses. Moreover, any error in the trial court's admission of these exhibits would have been to Tucker's benefit, as they arguably raised questions about the accuracy of the BMV report.

{¶ 65} State's Exhibit 8 also related to a conviction on the BMV report. The first page of the certified exhibit included information that identified the defendant in Case No. 12 TRC 14681 as Tucker, as confirmed by Trooper Picklesimon. It also listed five charged offenses, including two OVI violations. Pages two and three of the exhibit were certified copies of the judgment of conviction, following Tucker's guilty plea to a violation of R.C. 4511.19(A)(1)(a). State's Exhibit 8 satisfied both R.C. 2945.75(B)(1) and R.C. 2945.75(B)(2). The trial court did not err in admitting this exhibit.

{¶ 66} State's Exhibit 2 was a certified copy of Tucker's judgment of conviction in Case No. 18 CR 286 for OVI, a third-degree felony. The judgment entry included the defendant's name, date of birth, and the last four digits of his Social Security number. Trooper Picklesimon testified that the identifying information on the judgment entry matched the information for Tucker. Although the conviction in Case No. 18 CR 286 was not listed on the certified BMV report (State's Ex. 5), the State was not required to prove the OVI conviction by means of the BMV record, and the information on the judgment entry demonstrated that Tucker (and not a different individual with the same name) was the defendant in Case No. 18 CR 286. State's Exhibit 2 was properly admitted.

{¶ 67} Like State's Exhibit 2, State's Exhibit 6 was a certified judgment entry for an offense not listed on the BMV report. It also identified Tucker by name, birth date, and the last four digits of his Social Security number. State's Exhibit 6 stated, in part, that Tucker had entered a guilty plea to "operating a vehicle under the influence of alcohol and or drugs of abuse, a violation of Revised Code Section 4511.12(A)(1)(a), a felony of the fourth degree, as set forth in amended count one * * *." Although the statutory section did not correspond to the OVI statute, the trial court did not abuse its discretion in admitting the document into evidence for consideration. The incorrect statutory reference created a question of the weight to be given the exhibit, not its admissibility.

{¶ 68} Finally, we note that Tucker did not object to State's Exhibit 9, a certified copy of the judgment entry in Clark M.C. No. 12 TRC 13817 for OVI. That conviction was also listed on the certified BMV report.

{¶ 69} In short, the trial court did not abuse its discretion in admitting the State's

exhibits regarding Tucker's prior OVI offenses. Tucker's third assignment of error is overruled.

## IV.   Conclusion

**{¶ 70}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.