[Cite as *State v. Hicks*, 2024-Ohio-3422.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellant | : | C.A. No. 30046 |
| | : | |
| v. | : | Trial Court Case No. 2022-TRD-005322 |
| | : | |
| LARRY HICKS | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 6, 2024

. . . . . . . . . . .

ASHLEY THOMAS, Attorney for Appellant

ARVIN S. MILLER, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Appellant State of Ohio appeals from an order of the Dayton Municipal Court granting Appellee Larry Hicks's motion to dismiss on double jeopardy grounds. For the following reasons, we will affirm the judgment of the trial court.

I.     Facts and Course of Proceedings

{¶ 2} On September 22, 2022, Hicks was issued traffic citations for driving under a financial responsibility suspension in violation of R.C. 4510.16, operating a motor vehicle without a license in violation of R.C. 4510.12, driving a motor vehicle while under a 12-point suspension in violation of R.C. 4510.037, and driving a motor vehicle while under suspension for operating a vehicle under the influence ("OVI") in violation of R.C. 4510.14.   These citations were issued after Hicks was stopped at a sobriety checkpoint in Dayton, Ohio.

{¶ 3} A jury trial was held on September 23, 2023.   At the outset, counsel for the parties and the trial court discussed the proposed jury instructions.   The State raised a concern that one of the jury instructions related to the R.C. 4510.14 charge required the State to prove that Hicks had previously been convicted of driving under an OVI suspension.   According to the State, it did not have to prove a prior conviction for driving under an OVI suspension because that fact did not enhance the degree of the offense. Rather, this fact only needed to be proven by the State at sentencing in order to increase the potential penalty of the R.C. 4510.14 offense.   Defense counsel responded that he believed the State had to prove to the jury not only the previous conviction for driving under an OVI suspension but the OVI conviction itself.   According to defense counsel, the State needed to prove to the jury the prior conviction for driving under an OVI suspension, because that fact would enhance the degree of the offense from a first-degree misdemeanor to an unclassified offense.   The State disagreed, arguing that the

offense would remain a first-degree misdemeanor and the only thing that would change would be the potential penalty from six months incarceration to one year. The State noted that it was prepared to produce evidence of the prior conviction for driving under an OVI suspension but did not believe it was required to do so. The State also expressed a willingness to stipulate to the fact that Hicks had previously been convicted of an OVI offense so that the State would not have to bring it up at trial and potentially prejudice Hicks. Defense counsel did not agree to such a stipulation. After further discussion, the trial court decided to leave the proposed jury instructions as they were and commenced the trial.

{¶ 4} The jury was impaneled and sworn. After presenting the jury with preliminary instructions, the court allowed the parties to give their opening statements. At the beginning of her opening statement, the prosecutor stated, in part:

THE STATE: On September 29, 2020, the defendant was convicted of operating his motor vehicle under the influence of alcohol and/or drugs. Pursuant to that conviction he was issued a driver's license suspension for five years. That suspension ends September 29, 2025. On September 22, 2022, the defendant, operated his motor vehicle under a valid OVI suspension and he didn't even have a driver's license. . . . You'll see a picture of him in the driver's seat with seatbelt on and everything. Driving under an OVI suspension. You'll also see evidence from his certified copy of BMV record that he has a prior conviction for the OVI, which is where the OVI (inaudible) came from. You'll see a BMV

record certified copy that he has a prior OVI DUS conviction. Meaning he did this the first time and here we are again. . . . Because of that we will ask you to find the defendant guilty of driving under a suspension, driving under an OVI suspension, and driving without a valid license. Thank you.

Tr. 34-35.

{¶ 5} After defense counsel gave his opening statement, the trial court proceeded with the first witness, Detective Jonathan Miniard. Detective Miniard testified regarding his experience in reviewing records from the Bureau of Motor Vehicles ("BMV") relating to whether a driver had a valid driver's license and any driver's license suspensions. He noted that some of the more common license suspensions were those based on non-compliance, failure to pay child support, accumulation of 12 points on a driver's license, or convictions for OVI.

{¶ 6} Detective Miniard explained his normal process for investigating an OVI. He then testified about OVI checkpoints. According to Detective Miniard, the location of OVI checkpoints is based on an analysis of the location of OVI arrests, accidents involving OVI's, and accidents involving speeding. On September 22, 2022, an OVI checkpoint was set up on Third Street in Dayton, Ohio. Detective Miniard testified about the notice given to the public about the location and time of the checkpoint. Tr. 42. He explained the process a driver of a vehicle must follow when he arrives at a checkpoint.

{¶ 7} On September 22, 2022, Hicks drove a vehicle that was stopped at the aforementioned OVI checkpoint on Third Street. When a police officer asked Hicks for his identification, Hicks responded that he did not have a valid driver's license but had a

State I.D. As a result, Hicks was directed to pull his vehicle into another area to speak with Detective Miniard. At that time, Detective Miniard checked the L.E.A.D.S. records in his police cruiser's computer and determined that it would not be lawful to allow Hicks to drive away. The L.E.A.D.S. system runs off the same database as the BMV record system and provides police officers with information relating to whether a driver's license is valid, whether the driver has prior convictions, and whether the driver currently has any license suspensions.

{¶ 8} The State then presented State's Exhibit 3, a certified copy of Hicks's BMV record, for Detective Miniard and the jury to review. Defense counsel objected to this exhibit based on Detective Miniard's lack of personal knowledge to testify about the exhibit, the lack of authentication of the BMV record, and the State's failure to provide defense counsel with a copy prior to the day of trial. The trial court admitted Exhibit 3 into evidence over defense counsel's objection. Detective Miniard then explained to the jury the information contained in the exhibit, which showed that Hicks had never been issued a driver's license by the State of Ohio, had license suspensions in his record, and had previously been convicted of OVI and driving under suspension offenses.

{¶ 9} The State also moved to admit State's Exhibit 4, which purportedly was a certified record from the Kettering Municipal Court showing that Hicks had previously been convicted of driving under an OVI suspension. Defense counsel objected to this exhibit based on authentication grounds. The State noted that this particular exhibit related to the jury instruction issue that counsel and the trial court had discussed immediately prior to the commencement of trial. The trial court sustained defense

counsel's objection to Exhibit 4, finding that it did not meet the authentication requirements. Therefore, Exhibit 4 was never received into evidence.

{¶ 10} On cross-examination, Detective Miniard agreed that he had not cited Hicks for OVI on September 22, 2022, and had not seen any reason to cite him for OVI. Rather, Hicks had been diverted to Detective Miniard at the checkpoint based solely on the fact he did not have a driver's license.

{¶ 11} The State rested its case. The jury left the courtroom while counsel spoke with the trial court about potential motions. The parties again addressed whether the State was required to prove to the jury the existence of a prior conviction for driving under an OVI suspension. After a lunch break, the trial court announced to counsel that it now believed the State was correct relating to the issue of whether it had to prove a prior conviction as an element of the offense set forth in R.C. 4510.14. The court explained:

> THE COURT: Ok, we are back on the record and the jury is still on recess. They will be brought back in later. The parties are present. I did some research over the break and came up with an answer. Basically, [the State's] argument is correct. I'm reading it from State vs. Allen, an Ohio Supreme Court decision. In general, when the prior conviction only enhances the penalty for a subsequent offense but does not raise [its] degree, as in OVI, the prior conviction is not an element of the subsequent offense. So, I'm having the jury instructions modified to drop that as one of the elements and (inaudible) the prior offense for all of those.

Tr. 93.

{¶ 12} After further discussion, the State, to the trial court's surprise, moved for a mistrial:

> THE STATE: I don't think the issue was the OVI conviction. That wasn't – we knew we had to prove that and knew we had to – it was the prior conviction.
>
> THE COURT: Right.
>
> THE STATE: And I think that's where the State is concerned since Allen has already considered that prejudicial error and they were all remanded back down for a new trial. The State is making a motion for a mistrial based on that. Because the cat's already out the bag.
>
> THE COURT: Oh wait. I haven't heard anything about a mistrial.
>
> THE STATE: I'm making that. Sorry.
>
> THE COURT: Ok
>
> THE STATE: Because the cat's already out the bag and if this is prejudicial error (inaudible) we are going to be back here whenever the appeal process is done. Because it's alread[y] out the bag. We can't put it back in the bag. This is something that I think that – and I can't speak for the defense counsel but I think the outcome of this would be appealable. For sure by the State as well as defense.

Tr. 94-95.

{¶ 13} The trial court then asked defense counsel what his client's position was on the motion for a mistrial:

THE COURT: What's the defense response?

THE DEFENSE: I'm not sure I have one at this juncture, Your Honor.

THE COURT: I mean she made a motion for a mistrial.

THE DEFENSE: Right. I'm not going to – I would prefer not responding to that. This is kind of a blind side thing and I've not had an opportunity obviously to consider it.

THE STATE: That is based on the manifest necessity that warrants a mistrial as laid out in Criminal Rule 33 and specifically it's A(5). Basically, error in law was applied in the case and I think presenting information on defendant's prior OVI conviction and having us prove it is error.

THE COURT: Ok, and again I did the same research and all the same stuff you did. The motion for a mistrial is granted.

Tr. 95-96

{¶ 14} On December 7, 2023, Hicks filed a motion to dismiss the case with prejudice on double jeopardy grounds. According to Hicks, dismissal was appropriate because jeopardy had attached at trial, he had done nothing to occasion the mistrial, and the court had failed to consider a limiting instruction to the jury before declaring the mistrial. The State opposed the motion and requested an oral hearing on the motion.

{¶ 15} Following the oral hearing, the trial court granted the motion to dismiss on February 7, 2024. The trial court concluded that "[u]pon a review of the proceedings and arguments of the parties, the Court can but conclude that jeopardy has attached." The

State filed a timely appeal from the court's judgment.

II.    The Trial Court Did Not Err in Granting the Motion to Dismiss on Double Jeopardy Grounds

{¶ 16} The State's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN GRANTING HICK'S MOTION TO DISMISS.

A.    **Double Jeopardy**

{¶ 17} We review de novo a trial court's decision to dismiss a case on double jeopardy grounds.  *State v. Rocubert*, 2024-Ohio-395, ¶ 15 (3d Dist.), citing *State v. Anderson*, 2016-Ohio-5791, ¶ 20.

{¶ 18} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from repeated prosecutions for the same offense.  *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982).   "The purpose behind the prohibition against double jeopardy is that 'the State, with all its resources and power, should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty.' "  *State v. Gunnell*, 2010-Ohio-4415, ¶ 58 (2d Dist.), quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957).

{¶ 19} "The protections afforded by the Double Jeopardy Clause confer upon a criminal defendant the right to have his trial completed by a particular tribunal." *Id.* at ¶ 59, citing *Kennedy* at 671-672; *Arizona v. Washington*, 434 U.S. 497, 503-504 (1978). "This right, nonetheless, is not absolute." *Id.* "Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Washington* at 505.

{¶ 20} "Under the Double Jeopardy Clause, the issue of whether subsequent prosecution can be had after a mistrial has been declared is dependent on two things: first, whether jeopardy has attached and, second, whether, if jeopardy has attached, a retrial is barred by the Constitution or falls within an exception." *City of Sidney v. Little*, 119 Ohio App.3d 193, 196 (3d Dist. 1997).

{¶ 21} "Jeopardy attaches, so as to preclude subsequent criminal proceedings, at different points in time depending on the nature of the proceeding in question." *State v. Gustafson*, 76 Ohio St.3d 425, 435 (1996). "Where a criminal defendant has invoked the right to trial by jury, jeopardy does not attach so as to preclude subsequent criminal proceedings until the jury is impaneled and sworn." *Id.*, citing *Crist v. Bretz*, 437 U.S. 28 (1978). Clearly, jeopardy had attached in this case since the jury was impaneled and sworn and a witness had testified. Therefore, whether a subsequent prosecution of Hicks could proceed depends on whether an exception applies to the double jeopardy

bar.

### B.   Manifest Necessity

{¶ 22} Hicks did not consent to the State's motion for a mistrial.   In cases where a mistrial has been declared without the defendant's request or consent, double jeopardy will bar a retrial unless "the state carries the burden of demonstrating the manifest necessity of the mistrial in order to avoid the double jeopardy bar."   *Little* at 197, citing *Washington*, 434 U.S. at 505.

{¶ 23} "An order of the trial judge declaring a mistrial during the course of a criminal trial, on motion of the state, is error and contrary to law, constituting a failure to exercise sound discretion, where, taking all the circumstances under consideration, there is no manifest necessity for the mistrial, no extraordinary and striking circumstances and no end of public justice served by a mistrial, and where the judge has not made a scrupulous search for alternatives to deal with the problem."   *State v. Schmidt*, 65 Ohio App.2d 239 (6th Dist. 1979), paragraph five of the syllabus.   "A precipitate decision, reflected by a rapid sequence of events culminating in a declaration of mistrial, would tend to indicate insufficient concern for the defendant's constitutional protection."   (Citations omitted.) *Brady v. Samaha*, 667 F.2d 224, 229 (1st Cir. 1981).

{¶ 24} " 'A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened . . . .' "   *Gunnell*, 2010-Ohio-4415, at ¶ 70 (2d Dist.), quoting *State v. Reynolds*, 49 Ohio App.3d 27, 33 (2d Dist. 1988).   "The granting of a mistrial is necessary only when a fair trial is no longer possible."   *Id.*, citing *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).

{¶ 25} The United States Supreme Court has further instructed that "[a] trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." *Illinois v. Somerville*, 410 U.S. 458, 464 (1973). "If an error would make reversal on appeal a certainty, it would not serve 'the ends of public justice' to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court." *Id.*

### C.    Analysis

{¶ 26} The State argues that the Ohio Supreme Court's decision in *State v. Allen*, 29 Ohio St.3d 53 (1987), required the trial court to grant a mistrial once evidence of Hicks's prior conviction for driving under an OVI suspension was introduced to the jury. According to the State, this prior conviction was not an element of the offense under R.C. 4510.14, and its introduction into evidence was prejudicial error that required a mistrial. Further, the State argues that "Hicks invited error when he argued and forced the State to present this prejudicial evidence." Appellant's Brief, p. 13. Therefore, the State contends that the "granting of the mistrial was proper given the manifest necessity that precipitated the asking of the mistrial." *Id.* at 14.

{¶ 27} Hicks responds that he did not explicitly or implicitly consent to the mistrial. Further, he argues that there was no manifest necessity for the trial court to grant the State's motion for a mistrial because "[t]he basis for the mistrial was insufficient and one that could have been cured. Additionally, the judge failed to make a scrupulous search

for alternatives to granting a mistrial and preserve Mr. Hicks' right to have his case determined by his chosen jury." Appellee's Brief, p. 9. Finally, Hicks notes that he "was not prejudiced by the introduction of his prior record since it was going to come in to prove the underlying charge. The entire defense was grounded in forcing the state to meet its burden of proof. That proof, as the defendant was aware, required the introduction of the defendant's record." *Id.* at 12.

{¶ 28} Based on a review of the record before us, we conclude that the trial court's granting of a mistrial was premature in that the circumstances, as they existed in this case, did not demonstrate a manifest necessity requiring a mistrial, and the trial court did not sufficiently search for any available, reasonable alternatives prior to granting the State's request for a mistrial.

{¶ 29} The mistrial resulted from an earlier disagreement over one of the proposed jury instructions. Our review is hampered somewhat by the fact that we do not have in the record before us a copy of the proposed jury instructions. As best we can tell, the dispute appeared to be over whether the proposed jury instructions properly encapsulated what the State needed to prove at trial with regard to Hicks's alleged violation of R.C. 4510.14. That section provides:

> No person whose driver's or commercial driver's license or permit or nonresident operating privilege has been suspended under section 4511.19, 4511.191, or 4511.196 of the Revised Code or under section 4510.07 of the Revised Code for a conviction of a violation of a municipal OVI ordinance shall operate any motor vehicle upon the public roads or

highways within this state during the period of the suspension.

{¶ 30} In the present case, the State was relying on evidence that Hicks's license had previously been suspended due to an OVI conviction pursuant to R.C. 4511.19 and was still suspended at the time he was stopped at the OVI checkpoint. In order to prove this, the State needed to submit evidence that Hicks had previously been convicted of an OVI offense that resulted in a driver's license suspension that was still in effect at the time Hicks was operating a motor vehicle in violation of R.C. 4510.14.

{¶ 31} At trial, the State proved the prior OVI conviction through the use of a certified copy of Hicks's BMV record. This was permissible. R.C. 2945.75(B)(2) provides:

> Whenever in any case it is necessary to prove a prior conviction of an offense for which the registrar of motor vehicles maintains a record, a certified copy of the record that shows the name, date of birth, and social security number of the accused is prima-facie evidence of the identity of the accused and prima-facie evidence of all prior convictions shown on the record. The accused may offer evidence to rebut the prima-facie evidence of the accused's identity and the evidence of prior convictions.

*Accord State v. Tucker*, 2023-Ohio-2894, ¶ 63 (noting that the State was permitted to offer the certified BMV report as prima facie evidence of prior convictions).

{¶ 32} Hicks objected to the use of the BMV record on several grounds, none of which involved any potential prejudice to Hicks that would result from presenting to the jury a record of a past conviction for driving under an OVI suspension. The trial court

admitted the BMV record into evidence over defense counsel's objections. The State also attempted to admit into evidence the record from the Kettering Municipal Court of Hicks's previous conviction for driving under an OVI suspension. This was the record that the State had argued, at the beginning of the trial, it did not need to submit in order to get a conviction under R.C. 4510.14. The trial court ultimately refused to allow the admission of that record due to the State's failure to authenticate the record. However, this same evidence was contained in the BMV record that was shown to the jury.

{¶ 33} Apparently, the proposed jury instructions included an instruction that the State needed to prove that Hicks previously had been convicted of driving under an OVI suspension. Ultimately, the trial court declared a mistrial when it determined the State was correct that it did not have to prove this in order to convict Hicks of a violation of R.C. 4510.14. Initially, the trial court proposed simply eliminating that requirement from the proposed jury instructions. However, the State successfully argued that a mistrial was warranted.

{¶ 34} The State, and ultimately the trial court, relied on *Allen*, 29 Ohio St.3d 53, as the primary authority for declaring a mistrial. In that case, Allen was charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1). The amended complaint against Allen alleged that he had two previous drunk driving convictions within the previous five years. *Allen* at 53. The Ohio Supreme Court stated that the sole question before it was "whether the existence of a prior conviction is an essential element of the offense where that previous conviction affects only the penalty and does not enhance the degree of the offense itself." *Id.* at 54. The

Court noted that neither the statute under which Allen was convicted nor the relevant penalty statute provided that the degree of the offense was increased by virtue of Allen's previous offenses. *Id.* at 55. Rather, only the penalty was enhanced. Therefore, the Court held, "[w]here, as here, the prior offense affects only the penalty, it is not an essential element of the subsequent offense, but strictly a sentencing consideration for the court." *Id.*, citing *State v. Cichy*, 18 Ohio App.3d 6 (6th Dist. 1984).

**{¶ 35}** The *Allen* Court then made the following statement on which both the trial court and the State focused when the decision to grant the mistrial in Hicks's case was made:

The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand. For this reason, we do not consider the trial court's admonitions to the jury that appellee's prior convictions are immaterial to his guilt of the present charge sufficient to cure the error. Nor are we persuaded that appellee would have been convicted absent the disclosure to the jury of appellee's two prior convictions.

*Id.*

**{¶ 36}** We do not believe this admonition from *Allen* established a manifest necessity to declare a mistrial. Notably, the defendant in *Allen* agreed to stipulate to previous convictions but did not agree to let the jury see that stipulation. There was no

argument in that case that Allen invited the error in any way. Here, on the other hand, Hicks argued that the State needed to present evidence to the jury of his prior conviction for driving under an OVI suspension. Hicks invited any potential prejudice that would have resulted from the State's submission to the jury of evidence of his prior conviction for driving under an OVI suspension. It is clear from the record that Hicks's strategy was to force the State to prove every element of the offense, which defense counsel argued meant the State had to bring in authenticated records of a previous OVI conviction and a previous conviction for driving under an OVI suspension. The second of these was error, an error that Hicks invited. The State agreed in its appellate brief that Hicks had invited this error. The Ohio Supreme Court has made it clear that invited error by a defendant, even plain error, will not lead to reversal of a conviction on appeal. *State v. Rohrbaugh*, 2010-Ohio-3286, ¶ 10 ("We have repeatedly held that a defendant may not 'take advantage of an error that he himself invited or induced.' "), citing *State ex rel. Kline v. Carroll*, 2002-Ohio-4849, ¶ 27. In short, we cannot conclude on the record before us that the error of presenting to the jury evidence of Hicks's prior conviction for driving under an OVI suspension made "reversal on appeal a certainty." *Somerville*, 410 U.S. at 464. Therefore, the State failed to carry its burden of demonstrating the manifest necessity of the mistrial in order to avoid the double jeopardy bar.

{¶ 37} The trial court also failed to take the time to search for any reasonable alternatives before declaring a mistrial. After the State made its oral motion for a mistrial, the trial court asked defense counsel what his position was. Defense counsel was noticeably surprised by the motion and did not feel comfortable taking a position at that

moment without giving the motion more thought. This would have been a good time for a short break to allow defense counsel and the trial court to conduct the necessary research on the issue or to discuss potential alternatives to a mistrial. But that did not happen. Rather, the State pressed the trial court to declare a mistrial based on the theory that nothing could be done to cure the inherent prejudice to Hicks resulting from the jury's seeing the BMV record that contained information relating to Hicks's prior conviction for driving under an OVI suspension. The State and the trial court focused on the *Allen* case when discussing this prejudice, which led the court to abandon its original plan to modify the jury instructions. As a result, there was no further discussion of reasonable alternatives to a mistrial such as a curative instruction. Instead, little time elapsed and little discussion occurred between the State's motion for a mistrial and the trial court's granting the request. This rapid sequence of events culminating in a declaration of a mistrial illustrated neither a scrupulous exercise of sound discretion nor a sufficient concern for the defendant's constitutional protection.

{¶ 38} Based upon the unique factual record before us, we cannot conclude the trial court erred when it granted Hicks's motion to dismiss on double jeopardy grounds. The assignment of error is overruled.


III. Conclusion

{¶ 39} Having overruled the sole assignment of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.